UNITED STATES of America,
Plaintiff–Appellee,

v.

Thomas F. SANTORO; Catherine Marie Santoro; Thomas F. Santoro, as Guardian Ad Litem for Christopher Jason Ashley Santoro; Claimants–Appellants,

North Carolina Civil Liberties Union Legal Foundation, Amicus Curiae,

and

26.075 Acres, More or Less, Located in Swift Creek Township, Wake County, North Carolina, A Parcel of Real Property and all Improvements, Buildings, Structures, Fixtures, Furnishings, and Appurtenances Situated Thereon, said Property Being Titled in the Name of Rosemarie D. Santoro; and any and all Proceeds from the Sale of Said Property, Defendant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Rosemarie SANTORO,
Claimant–Appellant,

North Carolina Civil Liberties Union Legal Foundation, Amicus Curiae,

and

26.075 Acres, More or Less, Located in Swift Creek Township, Wake County, North Carolina; a Parcel of Real Property and all Improvements, Buildings, Structures, Fixtures, Furnishings, and Appurtenances Situated Thereon, said Property being Titled in the Name of Rosemarie D. Santoro; and any and all Proceeds from the Sale of Said Property, Defendant,

Thomas F. Santoro; Catherine Marie Santoro; Thomas F. Santoro, as Guardian Ad Litem for Christopher Jason Ashley Santoro, Claimants.

Nos. 88–6036, 88–6042.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 31, 1988.

Decided Jan. 31, 1989.

**1540**

Lacy Martin Presnell, III (Burns, Day & Presnell, P.A. on brief), Nicholas John Dombalis, II (Elizabeth Anania, Merriman, Nicholls & Crampton, P.A., on brief), for claimants-appellants.

Stephen Aubrey West, Asst. U.S. Atty. (Margaret Person Currin, U.S. Atty., on brief) for plaintiff-appellee.

William G. Simpson, Jr., Staff Attorney, NCCLU–LF, on brief, for amicus curiae.

Before HALL, Circuit Judge, BUTZNER, Senior Circuit Judge, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.

K.K. HALL, Circuit Judge:

In this 21 U.S.C. § 881(a)(7) civil forfeiture proceeding, Rosemarie Santoro appeals the order of the district court granting summary judgment against her claim on the defendant real property. Thomas Santoro, Rosemarie's husband, and their children, Catherine Marie and Christopher, appeal the same order which struck their claims for lack of standing. Because we find that the defendant real property was used to facilitate illegal drug transactions, we affirm the district court's order as to Rosemarie Santoro. Likewise, because Thomas Santoro had no interest in the property, we affirm his dismissal from the case. However, because we find that the Santoro children did have a beneficial interest in the property, we reverse the lower court's order as to the children.

### I.

The defendant real property is the Santoro residence, located in Wake County, North Carolina. It consists of approximately 26 acres and is worth in excess of $100,000. The property is bisected by a road and has been taxed as two separate parcels. However, the property's deed describes it as a single, undivided tract. On one side of the road lies a five-acre parcel, on which the house, a barn, and several outbuildings are situated. On the other side of the road lies the balance of the property, all of which is unimproved.[1]

The property is the remainder of a 38–acre farm that was purchased by the Santoros in 1979. In 1983, the Santoros were divorced and Mr. Santoro conveyed his one-half interest in the property to Mrs. Santoro under the terms of a separation agreement.[2] She was to use his share of the property to provide for the children's maintenance and education. Presently, both of the children attend college.

After the divorce, Mrs. Santoro and the children continued to reside on the property and Mrs. Santoro ran a small business out of their home. Also, as was planned in the separation agreement, she subdivided and sold portions of the property for the children's support.

---

**1.** Since the commencement of this action, a one-acre parcel of the unimproved portion of the property has been sold. The proceeds of the sale are being held in escrow, pending our resolution of this appeal.

**2.** The Santoros were remarried in December, 1986.

On four separate occasions in May and June of 1986, Mrs. Santoro sold small amounts of cocaine to Deputy Angela Knight, an undercover officer for the Wake County Sheriff's Department. All of the sales occurred on the smaller portion of the property. There is no evidence that illegal drugs were ever stored or manufactured on the property and it is apparent that Mrs. Santoro was only acting as an intermediary in the transactions. For her part in the sales, Mrs. Santoro received little or no money.

On June 30, 1986, Mrs. Santoro was indicted for several narcotics violations. On September 8, 1986, she pleaded guilty to one felony count of possession with intent to distribute 2.9 grams of cocaine, in violation of 21 U.S.C. § 841(a)(1).

On July 24, 1986, the government filed this forfeiture action against the defendant real property based on the alleged criminal conduct of Mrs. Santoro. On August 21, 1986, Mrs. Santoro, as record owner of the property, intervened and filed a claim. One week later, Mr. Santoro and the Santoro children also intervened, claiming an interest in the property. The government moved to strike the claims of Mr. Santoro and the children on the ground that they had no interest in the property and, consequently, lacked standing. The government and Mrs. Santoro filed cross-motions for summary judgment as to her claim. On April 15, 1988, the district court granted both of the government's motions, finding all of the defendant property subject to forfeiture. This appeal followed.

## II.

Appellants raise a variety of contentions. First, they contend that the forfeiture provision of 21 U.S.C. § 881(a)(7) is unconstitutionally vague on its face and as applied in this case. In the alternative, they maintain that if the statute is not vague, the facts of this case do not support its application to this property. Appellant's second alternative argument is that even if forfeiture were appropriate, it would be appropriate only for the residence portion of the property and not the entire tract. Mrs. Santoro argues that this provision, though couched as a civil forfeiture provision, is in reality a criminal forfeiture provision whose terms violate the constitutional guarantees of proportional punishment and due process. Mr. Santoro and the children contend that they were beneficial owners of the property and the trial court erred in dismissing their claims. We address these contentions seriatim.

Appellants' vagueness attack focuses on the words "use" and "facilitate" as they are found in the statute:

(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

(7) All real property, including any right, title, and interest in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of this title punishable by more than one year's imprisonment, except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

21 U.S.C. § 881(a)(7).

Appellants premise their vagueness argument on the fact that two divergent lines of authority have arisen concerning what constitutes "use" or "facilitation" under similar forfeiture provisions. The more liberal view of these terms holds property forfeitable whenever it "in any way" tends to make the trafficking of drugs easier. *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154, 157 (3d Cir.), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981). The more restrictive view of the statute allows forfeiture only if there has been established a " 'substantial connection' between the property and the underlying criminal activity." *United States v. All Those Certain Lots*, 657 F.Supp. 1062, 1064 (E.D.Va.1987); *United States v. One 1972 Chevrolet Corvette*, 625

F.2d 1026, 1029 (1st Cir.1980). Appellants conclude from this split in authority that if the courts cannot agree as to what the statute means, a person of ordinary intelligence certainly cannot reasonably be expected to know what activity the statute prohibits. While appellants' arguments might be persuasive under different circumstances, under the facts of this case, there is no room for them to complain of vagueness.

■■■ As the district court noted, while the terms "use" or "facilitate" can be, and have been, subject to differing interpretations, no reasonable interpretation could conclude that property which was used repeatedly as the situs for illegal cocaine sales was not "used, in any manner or part" to distribute cocaine. *See United States v. 124 East North Ave., Lake Forest, Ill.,* 651 F.Supp. 1350, 1353–54 (N.D.Ill. 1987). Thus, as applied in this case, this statute is not unconstitutionally vague. Furthermore, a party who engages in conduct clearly proscribed by a statute cannot complain of the vagueness of that statute as applied to others. *Village of Hoffman Est. v. Flipside, Hoffman Est.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). Therefore, appellants' facial challenge must fail as well.

Appellants next contend that there is not a sufficient connection between the defendant real property and illegal drug trafficking to justify this forfeiture. They maintain that there must be a "substantial connection" between the property and the predicate illegal acts, a connection they conclude is not present in this case.

■■■ We agree with appellants that for property to be forfeitable under 21 U.S.C. § 881(a)(7), there must be a substantial connection between the property and the underlying criminal activity. *Certain*

Lots, *supra*, at 1065. Although this Court has never expressly addressed this issue as it relates to 21 U.S.C. § 881(a)(7), we have found the "substantial connection" standard appropriate under the analogous provision of 21 U.S.C. § 881(a)(4). *United States v. 1966 Beechcraft Aircraft Model King Air,* 777 F.2d 947 (4th Cir.1985) (forfeiture of conveyances). This standard is a common sense interpretation of the statute, which is consonant with the congressional intent that the instrumentalities of the drug trade be reached, while ensuring that property only fortuitously connected with drug trafficking be preserved. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 195, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3378 *quoted in Certain Lots, supra,* at 1065. While we conclude that there must be a substantial connection between this property and Mrs. Santoro's actions, we find that her repeated use of the defendant property as a situs for conducting drug sales establishes this connection and thus, the property was used to facilitate her illegal conduct.[3]

■■■ Appellants argue strenuously that although the sales did occur on the property, they were small sales (a total of only 12.8 grams) that cannot justify the forfeiture of this family's home. Even if we were to sympathize with appellants' plight, it is not for us to determine the type or size of transactions necessary to justify the forfeiture of this property. Congress has determined that a *single* felony drug violation is all that is necessary to trigger 21 U.S.C. § 881(a)(7).[4] Congress has set no quantity limits on these predicate acts and consequently, we cannot. And, while we recognize that the home has a protected place in our jurisprudence, *Certain Lots, supra,* at 1065, we cannot sanction a rule that gives favored protection to drug dealers who

---

3. The holdings in *Certain Lots, supra,* and *United States v. $12,585 in U.S. Currency,* 669 F.Supp. 939 (D.Minn.1987), are not inapposite. In *Certain Lots,* the court found no substantial connection when the home owner merely showed cocaine to a prospective buyer, but left the premises to consummate the sale. *Id.* at 1063. In *$12,585 in U.S. Currency,* only one confirmed drug sale took place on the property and the trial court found that there was no

showing of a continuing drug business on the property. *Id.* at 943. Here, Mrs. Santoro made four separate sales on the defendant property during a two-month period.

4. The statute conditions forfeiture on "a violation of this title punishable by more than one year's imprisonment."

choose to deal directly from their homes. Thus, this property is a proper subject for forfeiture under 21 U.S.C. § 881(a)(7).

■ Likewise, we reject appellants' argument that only the smaller portion of the property, where the cocaine sales actually occurred, can be forfeited. The statute plainly states that, "[a]ll real property, including any right, title, and interest *in the whole of any lot or tract of land* and any appurtenances or improvements" is forfeitable. 21 U.S.C. § 881(a)(7) (emphasis added). This property, although divided by a road, is legally described as a single, undivided tract. The claimants' subjective characterization of the property as two tracts cannot serve as the legal basis for determining the number of tracts present for purposes of 21 U.S.C. § 881(a)(7). We adopt the reasoning of the court below that the "whole of any lot or tract of land" must be determined from the duly recorded instruments and documents filed in the county offices where the defendant property is located. *See also United States v. Reynolds,* 856 F.2d 675 (4th Cir.1988) (tract defined by instrument creating the interest in the property). *Cf. United States v. Littlefield,* 821 F.2d 1365, 1366–67 (9th Cir. 1987) (construing 21 U.S.C. § 853(a)(2)—criminal forfeiture). Consequently, the 26–acre parcel, in its entirety, is subject to this forfeiture.

### III.

■ Mrs. Santoro raises several constitutional challenges to this statute, which are premised to a great extent on her position that 21 U.S.C. § 881(a)(7) is a criminal, rather than a civil, provision. Our examination of the provision forces us to disagree.

In determining whether this forfeiture provision is criminal or civil, a two-step analysis is appropriate:

First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.

*United States v. D.K.G. Appaloosas, Inc.,* 829 F.2d 532 (5th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1270, 99 L.Ed.2d 481 (*quoting United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362–63, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984)). The first step of this analysis shows that Congress obviously intended 21 U.S.C. § 881(a)(7) to be civil in nature. The statute expressly provides for the use of the rules of civil admiralty, as well as the use of the civil procedures of the customs laws. 21 U.S.C. §§ 881(b), (d). As the Supreme Court has noted, Congressional intent is "clearly demonstrated by the procedural mechanisms it established for enforcing forfeitures under the statute." *One Assortment, supra,* at 363, 104 S.Ct. at 1105 (*quoted in D.K.G. Appaloosas Inc.,* 829 F.2d at 543).

The next step of our analysis tolerates a conclusion contrary to Congress' intentions only on the "clearest proof" that the effects of this statute are so punitive that the forfeiture cannot be treated as civil. *One Assortment, supra,* 465 U.S. at 365, 104 S.Ct. at 1106. This clearest of proof is not present. Although the punitive aspects of any forfeiture are self-evident,[5] the remedial, non-punitive purposes of 21 U.S.C. § 881 are extremely strong:

---

5. In *One Assortment, supra,* the Supreme Court listed several factors that it felt were helpful in assessing the punitive impact of a forfeiture statute. *Id.* 465 U.S. at 365 n. 7, 104 S.Ct. at 1106 n. 7. Our review of those factors finds that only two arguably lend support to Mrs. Santoro's contention that 21 U.S.C. § 881(a)(7) is a criminal statute—it does have a deterring effect and its operation was triggered by her criminal conduct. However, neither of these are persuasive. Whatever deterrent the provision provides, it is clearly ancillary to the provision's remedial, non-punitive purposes. And, as the Supreme Court has noted, "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938).

These remedial purposes include removing the incentive to engage in the drug trade by denying drug dealers the proceeds of illgotten gains, stripping the drug trade of its instrumentalities, including money, and financing Government programs designed to eliminate drug-trafficking. *United States v. Premises Known As 2639 Meetinghouse*, 633 F.Supp. 979, 993–94 (E.D.Pa.1986) (construing 21 U.S.C. § 881(a)(6)); *see also United States v. $2,500 in U.S. Currency*, 689 F.2d 10, 13–14 (2d Cir.1982), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984). In the face of these broad remedial purposes, we cannot conclude that the effects of 21 U.S.C. § 881(a)(7) are so punitive as to override the clear Congressional intent that it be a civil provision. Therefore, we find this forfeiture statute to be as it was intended, civil. *United States v. 30.80 Acres, Bruce Tp., Guilford Cty., N.C.*, 665 F.Supp. 422 (M.D.N.C.1987), *aff'd Reynolds, supra.*

██ Having reached this conclusion, we proceed to Mrs. Santoro's eighth amendment challenge that this forfeiture was disproportionate to her actions, excessive, and cruel and unusual punishment. Unquestionably, civil forfeiture provisions have been limited by some criminal procedural safeguards. *See, One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (fourth amendment's prohibitions of unreasonable searches and seizures); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886) (fifth amendment's prohibition against self-incrimination). However, the courts have been extremely reluctant to extend other constitutional protections to civil forfeitures. *See United States v. One 1970 Pontiac GTO 2–Door Hardtop*, 529 F.2d 65, 66 (9th Cir.1976) (per curiam) (due process); *D.K.G. Appaloosas, Inc., supra* (ex post facto clause); *United States v. $250,000 in U.S. Currency*, 808 F.2d 895 (1st Cir.1987) (reasonable doubt standard). This trend reflects a recognition that to judicially encumber what clearly is intended to be a civil proceeding with criminal procedural safeguards is contrary to the plain dictates of Congress. We share this view and decline to extend eighth amendment protections to 21 U.S.C. § 881(a)(7).

██ The same analysis also leads us to reject Mrs. Santoro's claim that the burden-shifting aspect of 21 U.S.C. § 881(a)(7) violates due process. The statute contemplates that once the government demonstrates probable cause for the forfeiture, the burden of proof shifts to the claimant to demonstrate by a preponderance of the evidence that the property is not subject to forfeiture. 21 U.S.C. § 881(d). Undoubtedly, Congress may alter the burden of proof in a civil proceeding as it sees fit, without constitutional implications. We join the other circuits that have addressed this issue and find the burden-shifting aspect of the statute constitutional. *See $250,000 U.S. Currency, supra*, at 900; *30.80 Acres, supra*, at 424–25.

Thus, we reject all of Mrs. Santoro's contentions and affirm the district court's order forfeiting her interest in the property.

## IV.

The Santoro children and Mr. Santoro claim an interest in the defendant property through the Santoro's 1983 separation agreement. They maintain that Mr. Santoro's conveyance of his one-half interest in the property to Mrs. Santoro was in trust, for the benefit of the children. Mr. Santoro argues that if for some reason this express trust fails, the one-half interest in the property should vest in him as the beneficiary of a resulting trust. The district court rejected these claims, finding that Mr. Santoro's conveyance to Mrs. Santoro was in fee, intended to relieve him of any further child support obligations. Because the lower court found neither the children nor Mr. Santoro had an ownership interest in the property, it dismissed their claims for lack of standing. Our reading of the separation agreement leads us to conclude that this conveyance was in trust and that the children are the beneficial owners of a one-half interest in the property.

In December of 1983, Mr. Santoro conveyed his interest in the defendant property to Mrs. Santoro by a quitclaim deed. According to the separation agreement, his release of the property was based upon the condition that the property would be used for the maintenance, support, and higher educational needs of the children. The deed specifically stated that it was executed in accordance with his obligations under the separation agreement. The separation agreement also expressly stated the Santoros' intentions in transferring the property:

> The Wife acknowledges that the Husband has paid child support to the Wife for the benefit of the children by releasing his interest in the property of the parties. It is the parties' intention that such release of interest and transfer of the property be sufficient for the continuing needs of the children, including but not limited to, their current maintenance needs, their medical and dental needs and their higher education costs.

We find this language, when viewed with the rest of the separation agreement, more than sufficient to demonstrate the parties' intent that the defendant property was to be subject to an express trust. We also find this arrangement legally sufficient to create the trust.

In North Carolina, an express trust can be created even though the declaration of trust is contained in an instrument other than the deed. *Peele v. LeRoy*, 222 N.C. 123, 125, 22 S.E.2d 244, 246 (1942). Furthermore:

> [w]hen the grantee in a deed, conveying the legal title to land, promises, at or before so acquiring the legal title, to hold it for the benefit of a third person, or declares that he will hold the land in trust for such third person, a valid, express trust is thereby created though the deed contains no provision with reference to any right of such third person.

*Wells v. Dickens*, 274 N.C. 203, 211, 162 S.E.2d 552, 557 (1968). Applying these principles to the case at hand, we find that the separation agreement, coupled with the deed, creates the intended trust. Therefore, the Santoro children were the beneficial owners of a one-half interest in the defendant property at the time of its forfeiture.[6]

The district court struck the children's claims for lack of standing because under 21 U.S.C. § 881(a)(7), only owners of the property have standing to challenge its forfeiture:

> ..., except that no property shall be forfeited under this paragraph, to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.

Because we find that the children were beneficial owners of one-half of the property, they did have standing to challenge the forfeiture of their interest. Thus, we reverse the district court's order dismissing their claims and remand for further proceedings in accordance with this opinion.[7]

The order of the district court, therefore, is affirmed in part and reversed in part.

**AFFIRMED IN PART; AND REVERSED IN PART.**

---

**6.** Because we find a valid express trust for the benefit of the children, we need not address Mr. Santoro's resulting trust claim.

**7.** We note that the children's one-half interest also extends to the escrowed proceeds from the sale of the one-acre parcel. We leave to the district court's determination in the first instance the priority of the children's and the government's claims and how, if necessary, the property should be divided: in kind, sale and division of proceeds, or otherwise.